DANIEL SCOTT *vs.* ELIZA K. AMOSS, Executrix, and others.

*Parol evidence—Admissibility of Parol evidence to. Explain or Vary a Written instrument—Creditors' bill—Interest.*

On the 4th of November, 1879, judgment was confessed on a sealed note given by A. to S. for $359, dated the 23rd of October, 1879, and payable on demand, to which was appended the following power of attorney: "I hereby authorize O. S. L. to appear for me and confess a judgment on the above note in favor of D. S. for three hundred and fifty-nine dollars, with interest from date, independent and exclusive of a judgment said S. now holds against me in the Circuit Court for Harford County for $1,035, with interest from about the 9th of November, 1871. Witness my hand and seal this 23rd day of October, 1879." It was duly signed and sealed. This power of attorney was filed in Court as part of the proceedings at the time, and as the authority upon which the judgment by confession was entered. HELD:

That parol proof was inadmissible to show that said note was given for the balance of interest due upon the older judgment for $1,035, mentioned in said power of attorney.

Parol or extrinsic evidence is admissible to explain some uncertainty or ambiguity in a written instrument, or to prove some collateral or independent fact about which the written agreement is silent, but not to contradict, vary, or explain a written instrument in which there is no uncertainty or ambiguity, or any terms of description requiring explanation.

Where real estate of a deceased debtor is sold under proceedings instituted by his creditors, the general rule is to calculate interest on all claims down to the date of the sale, and then to distribute the interest received, or which ought to have been received, by the trustee on the credit payments for the purchase money, *pro rata* to all the claims.

APPEAL from the Circuit Court for Harford County, in Equity.

Scott *vs.* Amoss, Ex'x.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*R. R. Boarman,* for the appellant. He was not present, but under leave of the Court filed notes.

*Stevenson A. Williams,* and * *James J. Archer,* for the appellees.

MILLER, J., delivered the opinion of the Court.

The appellant, Scott, recovered two judgments against James A. Amoss, one on the 13th of November, 1871, for $1035, with interest from the 1st of November, 1871, till paid, and $7.50 costs of suit, with stay of execution for one year from November 9th, 1871, and the other on the 4th of November, 1879, for $359, with interest from the 23rd of October, 1879, till paid, and $7.50 costs of suit. Each was a judgment *by confession,* and became a lien on the real estate owned by Amoss at its date. Amoss died on the 5th of February, 1882, leaving a will by which he devised all his estate, real and personal, to his wife for life, with remainder to his children, and appointed his wife his executrix. On the 13th of February, 1882, Scott filed a creditors' bill against the proper parties, alleging he was a creditor of the deceased on these two judgments; that the personal estate was insufficient to pay debts, and praying for the sale of the real estate. On the same day another bill for the same purpose was filed by other creditors. These cases were consolidated, and on the 9th of April, 1883, a decree for the sale of the real estate was passed, which was effected by the trustee on the 10th of July following.

<hr/>

*Mr. Archer was present, but took no part in the argument.

In her answer to Scott's bill the widow and executrix admits her husband was, at the time of his death, indebted to Scott on these two judgments, but not to the amount he claims; on the contrary, she avers she has been informed and believes that large payments have been made thereon, and that the second judgment was given *for the balance of interest and costs then due on the first judgment.* She afterwards filed a petition to the same effect, and prayed the cause be referred to the auditor to state an account showing the amount justly due Mr. Scott on these judgments. An order was thereupon passed directing the auditor to ascertain and report this amount, with power to take proof in relation thereto at the instance of either party on five days' notice. This order was passed in August, 1882, and the auditor proceeded to act under it. Exceptions were filed by both parties to some of the testimony so taken. There was great delay in the proceeding, and the final decision of the question was not made until the 13th of June, 1890, when the Court passed an order ratifying an account which excluded interest on the first judgment as contended for by the appellees. From that order Mr. Scott has taken this appeal.

The case can be disposed of here by considering one of the exceptions to testimony interposed by the appellant. From the record and proof it appears that the second judgment was confessed on a sealed note, given by Amoss to Scott for $359, dated the 23rd of October, 1879, and payable on demand, to which was appended the following power of attorney:

"I hereby authorize Otho S. Lee, to appear for me and confess a judgment on the above note in favor of Daniel Scott for three hundred and fifty-nine dollars, with interest from date, *independent and exclusive* of a judgment said Scott now holds against me in the

Circuit Court for Harford County for $1,035, with interest from about the 9th of November, 1871.

"Witness my hand and seal this 23rd day of October, 1879.

"JAMES A. AMOSS, [Seal.]".

This power of attorney was filed in Court as part of the proceedings, at the time, and as the authority upon which the judgment by confession was entered. The positive testimony of the appellant himself that no interest on the first judgment, except for the first year (for which a receipt was produced,) had ever been paid him and that the second judgment was not given for interest on the first, was properly excluded under our evidence law, because he testified on his own offer, when Amoss was dead and his executrix a party to the proceeding. *Code, Art.* 35, *sec.* 2; *Johnson and Wife vs. Heald, Ex'r,* 33 *Md.,* 352. The appellant must therefore rest his case upon the judgments themselves and this written power of attorney.

The appellees in support of their position produced the deputy clerk of the Court as a witness, who, when first examined, testified that on the morning he entered up the smaller judgment in the clerk's office, Amoss remarked to Scott that this "fixed the interest up to this time," to which Scott replied, "yes, that is right, or something of the kind;" witness thinks this conversation "took place on the day the judgment was entered up." After it had been satisfactorily proved that Amoss was not in the clerk's office on that day, the witness, (against the objection of appellant's counsel,) was recalled and examined again. On his second examination the witness goes more into detail, and says the conversation occurred a short time after the second judgment was entered; that the remark of Amoss made after Scott had looked at the papers and the docket entries of that judgment was

"this settles all interest upon the old judgment, " and
Scott's reply was, " that is all right and that settles the
interest;" that the conversation was in reference to the
interest on the old judgment, the docket of which was
also produced at Scott's request and was before them at
the time.   Being asked on cross-examination when this
conversation occurred, he says, " I am under the im-
pression it was some days, week or weeks after the day
the second judgment was entered."

The proof further shows that some time after the date
of the first judgment, Amoss deeded a portion of his
land to his son James A. Amoss, who subsequently sold
the same and wanted a release of the lien of the judg-
ment, so that he could convey it to the purchaser.   The
son, who was also produced as a witness by the appellees,
testified that on the 9th of February, 1880, he with his
father went to see Scott for the purpose of obtaining
this release, that they met him on the street and father
said to him, "Dan, I want you to release 85.acres to Jim,
he sold it and wants to give a deed for it;" that Scott
hesitated for a moment, and father said "Dan, the inter-
est is all square up.   I don't owe you anything but the
principal; " and Scott said, " all right, come on," and
they went to Otho Lee's office to write the release, where
Scott took paper, pen and ink and commenced writing the
release, but abruptly stopped, threw the pen down and
said "Otho you write this and I will sign it," but when it
was written Scott refused to sign; that, "after father said
the interest was paid, Scott made *no reply*, and said come
on go over to Otho Lee's office, and commenced writing."

There was no formal exception to the admissibility of
the evidence of this last witness, and it is argued
that being thus before the Court without exception or
contradiction it shows an *admission* by Scott of *payment*
of interest on the larger judgment down to February,
1880, without reference to the smaller judgment.   But we

do not think it proves such admission. The inference, and the only inference, we can draw from it is that when Scott was appealed to to *release* part of the land bound by the lien of this judgment, he at first hesitated, then agreed to do it, but when the release was prepared, he had changed his mind and declined to sign it. This is all we can make out of this testimony.

Exception was taken to the testimony of the deputy clerk and the conversation between Scott and Amoss detailed by him, as inadmissible to contradict, vary, or explain the written power of attorney before referred to. This exception is founded on a well settled and familiar rule of evidence. Cases, however, frequently occur in which parol or extrinsic evidence is admissible to explain some uncertainty or ambiguity in the written instrument, or to prove some collateral or independent fact about which the written agreement is silent. But this is not a case of that kind. Here we find no uncertainty or ambiguity in the written instrument, nor any terms of description requiring explanation. It seems to us a simple, plain document, expressed in clear and concise language. By it Mr. Amoss says in writing over his hand and seal, that the judgment which he thereby authorizes his attorney to confess is "independent and exclusive" of the former judgment which Scott held against him, which is accurately referred to by date and amount. This clearly means that this judgment is founded upon an entirely different indebtedness, and is in no wise connected with the former one. This clause seems to have been put in for the express purpose of excluding this judgment from any connection with the older one. Now it requires no argument to show that parol proof to the effect that it was given for interest due on the older judgment, connects it with that judgment and contradicts the express terms of the written document to the contrary. We are, therefore, clearly of opinion, the

Court below was in error in overruling this exception, and that it should have been sustained.

Besides this, there are considerations apart from the testimony which strongly tend to support the appellant's view of the case. In the first place, we can conceive of no reason why Scott should have desired to have another judgment for the interest due on the old one. The old judgment was bearing interest, and the whole of it, principal and interest, was a first lien on the judgment debtor's real estate. Why, then, should he wish to have a junior judgment for the interest which was thereby rendered less secure than it was by the existing judgment? We can perceive no use whatever for this second judgment for interest on the old one so far as Scott was to derive any benefit from it. Again, the second judgment does not amount to the interest then due on the first one. It was incumbent on the judgment debtor and those claiming under him to establish, by clear and satisfactory proof what had been paid on the judgment, and we find no such proof except as to payment of interest for the first year, for which a receipt was produced. The interest due, exclusive of that for the first year, amounts to more than the sum for which the second judgment was rendered. Lastly, both these parties were men of intelligence. Amoss had been a county commissioner, and was a man of ordinary business capacity, quite capable of attending to his own business affairs, and of understanding the plain terms of the power of attorney which he gave for the confession of this judgment. There is not even a suggestion that Scott practiced any fraud, deception or undue influence to obtain it from him. So far as the proof shows, it was his own free and voluntary act, and we must give it effect according to its plain terms.

Something was said as to the time to which interest on these judgments should be calculated. We see no

reason why this case should be taken out of the general rule, which is to calculate interest on all claims down to the date of the sale of the real estate which is to pay them, and then to distribute the interest received or which ought to have been received by the trustee on the credit payments for the purchase money, *pro rata,* to all the claims.

· It follows from what we have said that the auditor's account No. 3 is the one which ought to be ratified, and in order that this may be done, we reverse the order appealed from, and remand the case.

*Order reversed, and*
*cause remanded.*